David Berten (*pro hac vice* application granted)
Alison A. Richards (*pro hac vice* application pending)
Hannah Sadler (*pro hac vice* application pending)
GLOBAL IP LAW GROUP, LLC
55 West Monroe Street, Suite 3400
Chicago, IL 60603
312-241-1500
dberten@giplg.com
arichards@giplg.com
hsadler@giplg.com

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Rich Media Club LLC, a Florida Limited Liability Company,<br><br>Plaintiff,<br>vs.<br><br>Duration Media LLC, a Delaware corporation headquartered in Arizona,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>Jury Trial Demand |

COMES NOW THE PLAINTIFF, and for its Complaint brings this action for patent infringement against the Defendant and alleges:

**The Parties**

1. Plaintiff Rich Media Club LLC ("RMC") is a company organized under the laws of the State of Florida with a place of business in Salt Lake City, Utah.

2. Defendant Duration Media LLC ("Duration Media") is a limited liability company organized under the laws of the State of Delaware with a place of business at 10040 Easy Happy Valley Road, Number 423, Scottsdale, Arizona 85255.

## Jurisdiction and Venue

3. This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1, et seq., and more particularly 35 U.S.C. § 271.

4. This Court has jurisdiction over the subject matter of the patent infringement action under 28 U.S.C. §§ 1331 and 1338(a).

5. Duration Media is subject to this Court's jurisdiction because it asserts it has a "global presence in New York, Philadelphia, London, Miami, Los Angeles, and Scottsdale, AZ," and the only known address with regard to the Scottsdale presence is 10040 Easy Happy Valley Road, Number 423, Scottsdale, Arizona 85255 (which, on information and belief, is the address of Duration Media's Chief Executive Officer, Andrew Batkin).

6. Venue is proper in this District under 28 U.S.C. §1400(b) because Duration Media has a "global presence in New York, Philadelphia, London, Miami, Los Angeles, and Scottsdale, AZ," and the only known address with regard to the Scottsdale presence is 10040 Easy Happy Valley Road, Number 423, Scottsdale, Arizona 85255 (which, on information and belief, is the address of Duration Media's Chief Executive Officer, Andrew Batkin).

## Background Facts

### Online Advertising and RMC's Technology

7. Online advertising, including placing ads on web pages, is one of the largest advertising markets in the world. It is also one of the most complex because of the various ways that ads can be placed on web pages.

8. The online advertising system also faces many challenges that are not common in certain other media. For example, ads placed in printed media are readily verifiable to advertisers. The ads either appear in print or were not printed for some reason. Broadcast television ads are similar. They can be verified as having run, in full, during the purchased ad time by reviewing

recordings of broadcasts. There is no situation where the printed or televised ads were not "viewable" when a reader turned to a page of a publication or watched an ad-supported broadcast.

9. Online advertising is different. For any given content, such as an online magazine article, the way the user reads the article varies significantly for different users. Screen sizes can vary from small smartphone screens to large multi-screen monitors. The size of the browser widow on each of these various sized screens is itself varied. An ad placed that would have run on page 2 of a print article may fall on many different "pages" of an article that is scrolled through on many different users' differently-sized web browsers and screens. And many of those virtual "pages" may never have actually become viewable to the online reader. The reader may never scroll to a part of the article where the ad would have appeared.

10. Verifying whether an online ad entered a part of a web browser window that was viewable to each of many varied web browser/screen combinations presented a technological challenge that had to be solved for online advertising to work. No advertiser wants to pay for ads that are effectively invisible, and publishers want to be able to demonstrate that viewers can see the ads their advertisers are paying for.

11. RMC solved these and other technical issues with innovative, patented technology. By understanding the relationship between the size of content and the size of ads placed alongside the content, RMC's technology can, among other things: (1) assist in loading ads just before a user is expected scroll to the content; (2) confirm that an ad is actually placed with the content regardless of whether it becomes viewable (and for how long); (3) confirm that an ad actually became viewable (and for how long); and (4) allow for the "first print" of an ad to be replaced with a "second print" of a different ad based on various criteria, such as how long the first print ad had been placed, was viewable, or both.

12. RMC described the relationship among the size of a viewer's screen, the size of a browser window, and the size of a webpage that is larger than the browser window in several patent specifications. Several RMC patents include a figure like Figure 51, below, which shows how the content page (labelled number 21) is larger than the computer screen (labelled 31), which in turn is larger than the user's browser window (labelled number 41). Only content (and ads) in the browser window are viewable.




FIG. 51

13. As of September 2023, RMC has received thirteen issued United States patents for inventions related to ad viewability, monitoring, and confirmation.

14. Among the patents that have issued and been assigned to Rich Media Club is U.S. Patent No. 11,741,482, which was duly issued on August 29, 2023. Exhibit G.

15. The '482 patent's title is: "System and Method for Creation, Distribution and Tracking of Advertising Via Electronic Networks." The '482 patent extends 121 pages.

16. The patent describes its technical field:

> The present invention relates generally to methods and systems for creation and distribution of advertising, promotional and informational electronic communications regarding products and services via computer and communication networks, and displaying same at desired locations. More specifically, the present invention is a system and method for creation of electronic advertisements using digital content made available for licensing, and placing the ads at desired network locations utilizing an auction of designated advertising space at desired locations on a network. The system can be used to provide an ad content as well as an ad space exchange for content licensors, advertisers and ad publishers, including barter-based implementations.

17. The claims of the '482 Patent are subject matter eligible. *See, e.g., Rich Media Club v. Duration Media* opinion, attached as Exhibit A.

18. The claimed inventions make specific improvements to the functionality and usefulness of electronic networks used for advertising. The patent explains:

> The present invention improves over prior advertising systems and methods in many ways. The present invention does not embed advertising HTML, files within a web page, providing considerable economies to advertisers in saved labor, time and cost in terms of both inserting advertisements into web page files, and later changing any of those advertisements. The present invention functions totally transparently to a network user and which neither inconveniences nor burdens the user. The present invention does not require a network user to download or install on the user's computer a separate application program specifically to receive advertising or perform any affirmative act other than normal browsing to receive such advertising.

19. The details of the system and methods are in the claims, which must be read in light of the specification, including its figures. The 83 figures in the patent make clear that a non-abstract system was invented. For example, Figure 1 is a diagrammatical overview of the communication flow of the present invention. Figure 2 is a diagrammatical representation of system components and their interrelationship. Figure 3 is a diagrammatical overview of the relationship among system servers and website viewers. Figure 51 is a is a diagrammatical overview of the interplay and overlap of a viewer's screen display area, browser application, browser window and ad content display page.

FIGURE 1




FIGURE 2




FIGURE 3






FIG. 51

20. The ’482 describes the invention is the context of Fig. 51:

> As can be seen, the ad content display page is larger than the browser window, so not all of the ad content display page area is within the browser window dimensions and scrolling position shown on the viewer’s display screen. In this embodiment the activation of billboard modules can be controlled so that only the billboard module that is designated to activate when a pre-defined area within the ad content display page area is within, or within a pre-defined distance outside of, the viewer's browser window dimensions and scrolling position is activated, and ***so that billboard module activation occurs only when such pre-defined ad content display page triggering area is within, or within a pre-defined distance outside of, the viewer’s browser window dimensions and scrolling position.***

21. Electronic advertising that was never actually displayed or seen by consumers was an unresolved technical problem as of the time of the patented invention.

22. The ’482 patent’s claims address the problem with Internet advertising at the time that certain advertisements were never displayed on the screen to the consumer. The RMC claims disclose an inventive solution for this particular Internet-centric problem.

23. The claims address these technical challenges. These challenges are particular to advertising on the internet and other electronic networks. The claims do not resolve these problems by reciting an abstract idea or through routine, well-understood, or conventional steps

or components. At the time of the invention, the individual elements in the claim, and the claimed combination, were not well-understood, routine, or conventional activity.

24. The claims do not recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks. Confirming that it is rooted in technology, and that it does not recite only conventional computer technology, the patent specification discloses over ten pages of sample computer code, including at columns 23-30, 36-40, and 56-59.

25. The claims do not broadly and generically claim "use of the Internet" to perform an abstract business practice (with insignificant added activity). The claims at issue here specify how interactions with the Internet are manipulated to yield a desired result—a result different from the conventional and a result that overrides the routine and conventional sequence of events ordinarily triggered. The invention stops the computer network from operating in its normal, expected manner by reciting an invention that is different from the routine or conventional use of the Internet.

26. The asserted claims are directed to a method and recite tangible components and results. The claims by their own terms do not recite a fundamental economic or longstanding commercial practice. The claims but their own terms do not recite only conventional computer technology. By their own terms, the claims do not recite generic components described only by their generic function.

27. Given the method and the claim elements that claims 1-7 recite, the method cannot be performed by a human and is not capable of being performed mentally by a person or with pen and paper.

28. Multiple patents related to the ’482 patent have traversed rejections under § 101. For example, the PTAB reversed a rejection under § 101 of Application No. 11/803,779, now U.S. Patent No. 10,380,602. That decision is *Ex Parte Brad Krassner*, dated December 18, 2018 and is attached hereto at Exhibit B. The PTAB found those claims, directed to presenting electronic advertisements on webpages, to be patentable.

29. In its decision, the PTAB relied on *DDR Holdings, LLC v. Hotels.com*, L.P., 773 F.3d 1245 (Fed. Cir. 2014):

> Accordingly, as in *DDR Holdings*, the claims recite “a solution to this network-centric challenge,” e.g., the efficient, timely, and cost effective application of advertisements to webpages, for which there was no precomputer or pre-Internet analog.

30. During prosecution of another patent related to the ’482 patent, U.S. Application No. 11/643,245, now Patent No. 10,380,597, the examiner relied on this PTAB decision in the Notice of Allowance, explaining that “per the reasoning explained in the Patent Board Decision issued on December 18, 2018, the previous 101 rejection, 103 rejection, and examiner arguments have been withdrawn and the claims are allowable.” Exhibit C.

31. During prosecution of the ’482 Patent, to overcome the examiner’s rejection based on § 101, RMC cited the PTAB’s decision in *Ex Parte Brad Krassner* and explained, “[e]xemplary claim 2 [issued claim 1] of the present application recites an improvement to the technical field of determining when to render an advertisement in a predefined area on a page displaying in a browser window.” Exhibit D.

32. As the applicant further explained:

> This process provides a unique technology solution for determining when to render advertisement content in a predefined area on a page displaying in a browser window, and further improves upon prior art techniques for determining when to render advertisement content on a page displaying in a browser window.…

> Specifically, exemplary claim 2 [issued claim 1] recites a technology solution that relies upon making a determination that the predefined portion of the predefined area of the ad content display page is in the visible area of the browser window. This process is rooted in computer technology because the nature of this determination must rely upon browser technology..…
>
> There is simply no pre-internet analogy to this determination. For example, there is no pre-internet advertising process that mimics what is recited in exemplary claim 2 [issued claim 1].

33. And, as applicant also explained, the claims include at least the following inventive concept:

> (b) in response to a determination that the predefined portion of the predefined area of the ad content display page is in the visible area of the browser window, causing a communication to be sent from the remote computing device to one or more dispatcher servers

This feature is part of the overall inventive process: the replacement advertisement is only rendered by the browser when a determination has been made that the predefined area that is used to display the advertisement has been in view within the visible area of the browser window for a predefined period of time.

34. In the Notice of Allowance filed on March 29, 2023 for the '482 Patent, attached hereto as Exhibit E, the examiner reasoned: "Applicant argument resolved the 101 issues."

35. The claims of the '482 patent were not routine, well-understood, or conventional at the time of invention. In 2009, for example, David Cohen, the Chief Executive Officer of the Interactive Advertising Bureau*,* described RMC's technology: "It would appear that (among other things) RealVu has developed a technology that allows them to identify when an online ad is 'within the viewable area' of a user's screen, and for what duration." This technology was "a giant step forward for the industry" that "will set a new bar for accountability – one that will influence all communications channels" and "could change everything." (See Exhibit F).

36. In *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019), the Federal Circuit reiterated that issued patents are presumed both valid and eligible:

> But patents granted by the Patent and Trademark Office are presumptively valid. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100, 131 S.Ct. 2238, 180 L.Ed.2d 131 (2011) (citing 35 U.S.C. § 282). This presumption reflects the fact that the Patent and Trademark Office has already examined whether the patent satisfies "the prerequisites for issuance of a patent," including § 101. *Id.* at 95–96, 131 S.Ct. 2238. While an alleged infringer "may attempt to prove that the patent never should have issued in the first place," i.e., challenge its validity, the alleged infringer must prove that the patent does not satisfy these prerequisites before the patent loses its presumption of validity. *Id.* at 96–97, 131 S.Ct. 2238. To the extent the district court departed from this principle by concluding that issued patents are presumed valid but not presumed patent eligible, it was wrong to do so. *See Berkheimer*, 881 F.3d at 1368 ("Any fact, such as [whether a claim element or combination is well-understood or routine], that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence."); *see also Microsoft*, 564 U.S. at 100, 131 S.Ct. 2238.

## **Count I: Infringement of U.S. Patent No. 11,741,482**

37. RMC reasserts and realleges the preceding paragraphs of this Complaint as though set forth fully here.

38. Duration Media directly infringes at least claims 1, 2, 3, 4, and 6 of the '482 Patent by making, using, offering for sale, and/or selling Infringing Services (defined below) that infringe one or more claims of the '482 Patent.

39. Duration Media's Highly Viewable Ad Exchange ("HVAX") and its Viewability as a Service ("VaaS") products/services (each an "Infringing Service") infringe at least claims 1, 2, 3, 4, and 6 of the '482 Patent:

> 1. A method for rendering advertisement content in an ad content display page, wherein the ad content display page includes (i) a predefined area configured to display advertisement content, the predefined area being a portion of the ad content display page, and (ii) page content displayed in other portions of the ad content display page, the page content being separate from the advertisement content, the ad content display page being scrollable to allow a portion of the ad content display page to appear in a visible area of a browser window of a browser that is configured to be operated by a remote computing device, the method comprising:

(a) determining whether a predefined portion of the predefined area of the ad content display page is in the visible area of the browser window; and

(b) in response to a determination that the predefined portion of the predefined area of the ad content display page is in the visible area of the browser window, causing a communication to be sent from the remote computing device to one or more dispatcher servers, wherein the one or more dispatcher servers are configured to:

(i) receive the communication, and

(ii) cause advertisement content to be served to the remote computing device, wherein the browser is configured to render the advertisement content in the predefined area of the ad content display page, and

wherein the advertisement content first appears in the predefined area of the ad content display page only after the one or more dispatcher servers serve the advertisement content to the remote computing device and the browser renders the advertisement content in the predefined area of the ad content display page.

2. The method of claim 1 wherein after the one or more dispatcher servers receive the communication, the one or more dispatcher servers further:

(iii) cause advertisement content to be selected for display on the ad content display page, wherein the selected advertisement content is then served to the remote computing device.

3. The method of claim 2 wherein the advertisement content is selected at least partially as a result of an auction.

4. The method of claim 3 wherein the auction is conducted in real time between the time the communication is sent from the remote computing device and the time that the advertisement content is selected.

6. The method of claim 1 further comprising:

(c) maintaining the same advertisement content that was previously rendered in the predefined area for at least a predefined period of time during the time period that the predefined portion of the predefined area of the ad content display page is in the visible area of the browser window.

40. RMC has suffered and is suffering damages as a result of Duration Media's infringement, which damages may include lost profits or a reasonable royalty in an amount to be determined at trial.

41. As evidenced at least by their copying of a drawing in RMC's patents, Duration Media had knowledge of patents in the '482 family (if not the '482 Patent itself). Duration Media's infringement of the '482 Patent is therefore willful and deliberate, entitling RMC to increased damages under 35 U.S.C. § 284.

42. Duration Media's conduct is also exceptional, entitling RMC to recover its attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**Jury Demand**

RMC demands a trial by jury on all issues that may be so tried.

**Request For Relief**

WHEREFORE, Plaintiff RMC requests that this Court enter judgment in its favor and against Defendant Duration Media as follows:

A. Adjudging, finding, and declaring that Duration Media has infringed the '482 Patent under 35 U.S.C. § 271;

B. Awarding the past damages arising out of Duration Media's infringement of the '482 Patent to RMC either in RMC's lost profits or in an amount no less than a reasonable royalty, together with prejudgment and post-judgment interest, in an amount according to proof;

C. Adjudging, finding, and declaring that Duration Media's infringement is willful and awarding enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284;

D. Awarding attorneys' fees, costs, or other damages pursuant to 35 U.S.C. §§ 284 or 285 or as otherwise permitted by law;

E. Entering an injunction preventing Duration Media from continuing to infringe the '482 Patent;

F. Granting RMC such other further relief as is just and proper, or as the Court deems appropriate.

Dated: September 19, 2023

**Global IP Law Group, LLC**

By: <u>*/s/ David Berten*</u>
David Berten
Alison A. Richards
Hannah Sadler
Global IP Law Group, LLC
55 West Monroe Street, Suite 3400
Chicago, IL 60603
(312) 241-1500

*Attorneys for Plaintiff*